BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | MDL No. _____ |

**MEMORANDUM IN SUPPORT OF MOTION**
**TO TRANSFER TO DISTRICT OF DELAWARE**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Novartis Pharmaceuticals Corporation ("Plaintiff") hereby moves to transfer *Novartis Pharmaceuticals Corporation v. Mylan Pharmaceuticals Inc., Mylan Inc., Mylan Laboratories Limited*, Case No. 1:19-cv-00201-IMK (N.D. W. Va.), pending before Judge Irene M. Keeley in the United States District Court for the Northern District of West Virginia, to Chief Judge Leonard P. Stark in the United States District Court for the District of Delaware for coordinated and consolidated pretrial proceedings with three other actions already pending in that district against 38 defendants.

**BACKGROUND**

In October 2019, Plaintiff filed three complaints in the United States District Court for the District of Delaware alleging patent infringement against a total of 38 defendants representing 18 different groups of generic drug makers,[1] including Mylan Pharmaceuticals Inc.,

---

[1] The defendants are (1)(a) Alembic Pharmaceuticals Limited, (b) Alembic Global Holding SA, and (c) Alembic Pharmaceuticals, Inc. (collectively "Alembic"); (2) Alkem Laboratories Ltd. ("Alkem"); (3)(a) Aurobindo Pharma USA Inc. and (b) Aurobindo Pharma Ltd. (collectively "Aurobindo"); (4)(a) Biocon Pharma Limited, (b) Biocon Limited, and (c) Biocon Pharma, Inc. (collectively "Biocon"); (5) Crystal Pharmaceutical (Suzhou) Co., Ltd. ("Crystal Pharma"); (6)(a) Dr. Reddy's Laboratories, Inc. and (b) Dr. Reddy's Laboratories, Ltd. (collectively "Dr. Reddy's"); (7)(a) Hetero USA Inc., (b) Hetero Labs Limited, and (c) Hetero Labs Limited Unit III (collectively "Hetero"); (8)(a) Laurus Labs Limited and (b) Laurus Generics Inc. (collectively

1

Mylan Inc. and Mylan Laboratories Limited (collectively "Mylan"): Case No. 1:19-cv-01979-LPS (D. Del.), filed on October 17, 2019; Case No. 1:19-cv-02021-LPS (D. Del.), filed on October 24, 2019 and Case No. 1:19-cv-02053-LPS (D. Del.), filed on October 29, 2019. Plaintiff filed those three complaints in response to 19 notice letters[2] indicating that those drug makers had submitted Abbreviated New Drug Applications ("ANDAs") seeking FDA approval to market generic versions of Plaintiff's Entresto® drug product, prior to the expiration of Plaintiff's Orange Book-listed patents. All three Delaware actions are assigned to Judge Stark.

Twelve defendants are incorporated in Delaware.[3] Counsel for the other ANDA-filer defendants—except Mylan—have agreed in correspondence with Plaintiff's counsel that they would not contest personal jurisdiction and venue in the District of Delaware for purposes of litigation concerning their respective Entresto® ANDAs. *See* Declaration Of Christopher E. Loh ("Loh Declaration"), filed concurrently herewith. Because Mylan did not so agree, Plaintiff on

---

"Laurus"); (9)(a) Lupin Atlantis Holdings, S.A., (b) Lupin Limited, (c) Lupin Inc., and (d) Lupin Pharmaceuticals, Inc. (collectively "Lupin"); (10)(a) Macleods Pharmaceuticals Ltd. and (b) Macleods Pharma USA, Inc. (collectively "Macleods"); (11)(a) MSN Pharmaceuticals Inc., (b) MSN Laboratories Private Limited, and (c) MSN Life Sciences Private Limited (collectively "MSN"); (12)(a) Mylan Pharmaceuticals Inc., (b) Mylan Inc., and (c) Mylan Laboratories Limited (collectively "Mylan");  (13) Nanjing Noratech Pharmaceutical Co., Limited ("Noratech"); (14)(a) Natco Pharma Limited and (b) Natco Pharma, Inc. (collectively "Natco"); (15) Novugen Pharma (Malaysia) Sdn. Bhd. ("Novugen"); (16) Teva Pharmaceuticals USA, Inc. ("Teva"); (17)(a) Torrent Pharma Inc. and (b) Torrent Pharmaceuticals Ltd. (collectively "Torrent"); and (18)(a) Zydus Pharmaceuticals (USA) Inc. and (b) Cadila Healthcare Ltd. (collectively "Zydus").

[2] Two of the Lupin entities, Lupin Atlantis Holdings, S.A. and Lupin Limited, filed separate ANDAs. Thus, while there are 18 different groups of generic drug makers in these actions, there are 19 different ANDAs.

[3] Alembic Pharmaceuticals Inc., Aurobindo Pharma USA Inc., Biocon Pharma, Inc., Hetero USA Inc., Laurus Generics Inc., Lupin Inc., Lupin Pharmaceuticals, Inc., Macleods Pharma USA Inc., MSN Pharmaceuticals Inc., Natco Pharma, Inc., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc.

October 30, 2019 filed a complaint against Mylan in the Northern District of West Virginia., 1:19-cv-00201-IMK (N.D. W. Va.), ("Mylan West Virginia Action"), where Mylan Pharmaceuticals Inc. is incorporated.  The claims made by Plaintiff in the complaint in the Mylan West Virginia Action are substantively identical to the claims made by Plaintiff against Mylan in Delaware Case No. 1:19-cv-02053-LPS (D. Del.).

On December 16, 2019, Plaintiff's counsel proposed to Mylan's counsel an informal alternative to transfer and consolidation under 28 U.S.C. § 1407, *i.e.*, that Mylan agree to stay the Mylan West Virginia Action and to proceed in Delaware for pretrial purposes as if an MDL order under 28 U.S.C. § 1407 were in place.  Plaintiff's counsel followed up with Mylan's counsel by voicemail on December 18, 2019 and by email December 19, 2019.  As of the time of this filing, Mylan's counsel has not responded to Plaintiff's proposal.

In all four actions, Plaintiff has asserted the same four patents, alleged the same substantive claims, and is seeking the same relief. [4]  All four actions remain in their earliest stages: no answers have been filed, no conferences have been held, no discovery has taken place, and no substantive orders have been issued.  No date for an initial scheduling conference has been set in the District of Delaware, and the initial scheduling conference in the Northern District of West Virginia will not occur until March 3, 2020.  Case No. 1:19-cv-00201-IMK, D.I. 28 (N.D. W. Va.).

There is ample time for Judge Stark to conduct pretrial proceedings in all four actions if the Panel orders the transfer of the Mylan West Virginia Action.  Ordinarily, where a patent

---

[4] Plaintiff has asserted U.S. Patent Nos. 8,877,938 and 9,388,134 ("'938 patent" and "'134 patent," respectively) against all defendants.  Plaintiff also has asserted U.S. Patent No. 8,101,659 ("'659 patent") against all defendants except Alembic, Lupin, and Noratech and U.S. Patent No. 8,796,331 ("'331 patent") against all Defendants except Alembic, Lupin, Macleods, and Noratech.  These patents are collectively referred to as the "patents-in-suit."

owner sues an ANDA filer within 45 days of receiving notice of the ANDA filing, FDA approval of the ANDA is stayed for 30 months from the date notice was received.  21 U.S.C. § 355(j)(5)(B)(iii).  Because Plaintiff received defendants' notice letters in September 2019, a 30-month statutory stay would have expired in March 2022.  Here, however, the relevant statutory stay expires more than a year later, on July 7, 2023, because the instant actions were brought within five years of the July 7, 2015 FDA approval date for Entresto®, and because the FDA has granted Entresto® pediatric exclusivity.  *See* 21 U.S.C. § 355(j)(5)(F)(ii) (extending 30-month statutory stay to 7.5 years from branded approval date for suits brought between four and five years after branded approval date); 21 U.S.C. § 355a(b)(1)(A)(i)(I) (further extending stay under (j)(5)(F)(ii) to 8 years for pediatric exclusivity).

## ARGUMENT

The Panel may centralize actions pursuant to 28 U.S.C. § 1407 if the movant establishes three elements: (1) that "common questions of fact" exist; (2) that centralization will "be for the convenience of [the] parties and witnesses"; and (3) that centralization "will promote the just and efficient conduct of [the] actions."  Each of these three criteria is easily satisfied here.  Indeed, in 2019 alone, the Panel three times has transferred Hatch-Waxman actions against Mylan from the Northern District of West Virginia to the District of Delaware under circumstances like these.  *In re Kerydin (Tavaborole) Topical Sol. 5% Patent Litig.*, 366 F. Supp. 3d 1370, 1371–72 (J.P.M.L. 2019); *In re Auryxia (Ferric Citrate) Patent Litig.*, MDL No. 2896, 2019 U.S. Dist. LEXIS 133975, at *2–3 (J.P.M.L. July 31, 2019); *In re Palbociclib Patent Litig.*, 396 F. Supp. 3d 1360, 1362 (J.P.M.L. 2019).  As in those three cases, transferring the Mylan West Virginia Action to the District of Delaware and consolidating that Action with the three pending Delaware actions for pretrial proceedings is both appropriate and warranted.

1.  **The Presence Of Many Common Questions Of
    Fact Across The Actions Warrants Centralization**

The existence of a substantial number of common questions of fact across the four actions—which bear squarely on core aspects of the parties' claims and defenses—merits consolidation of the Mylan West Virginia Action with the three actions pending in Delaware. Where, as here, the same patents are asserted in separate, parallel actions, "[a]ll actions can . . . be expected to share factual and legal questions concerning such matters as the technology underlying the patents, prior art, claim construction and issues of infringement involving the patents." *In re Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005). Common questions of fact that likely will arise in each of the four actions fall into four categories.

*First*, each ANDA filer purports to have submitted an ANDA to the FDA requesting approval to manufacture and market a generic version of Entresto®. Accordingly, common questions will be presented as to whether these regulatory submissions constitute infringement of the patents-in-suit under 35 U.S.C. § 271(e)(2), and whether the proposed ANDA products will directly or indirectly infringe Plaintiff's patents under other provisions of 35 U.S.C. § 271. *See Ferring B.V. v. Watson Labs., Inc.-Fla.,* 764 F.3d 1382, 1387–88 (Fed. Cir. 2014); *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1570 (Fed. Cir. 1997).

*Second*, each of the four actions involves common fact issues related to the validity of the patents-in-suit. For example, ANDA filers named as defendants across all four actions—including Mylan—have alleged in their notice letters to Plaintiff that the '659 and '331 patents-in-suit are invalid as obvious under 35 U.S.C. § 103. Determining whether the claimed inventions are obvious is a legal issue common to all four actions which requires underlying factual inquiries that are common to all four actions, including, among other things, the level of

5

ordinary skill in the art, the scope and content of the prior art, whether the person of ordinary skill ("POSA") would have been motivated to combine the prior art references, and whether the POSA would have had a reasonable expectation of success in achieving the claimed invention. *See, e.g., Intercontinental Great Brands LLC v. Kellogg N. Am. Co.,* 869 F.3d 1336, 1343 (Fed. Cir. 2017) (setting forth the factual determinations underlying the obviousness inquiry).

*Third,* both validity and infringement may require the predicate, pretrial resolution of claim construction disputes. Claim construction is a question of law that often requires the district court to resolve subsidiary factual questions. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 574 U.S. 318, 331 (2015). Moreover, the Panel has repeatedly observed that centralization is necessary to prevent inconsistent pretrial rulings "particularly on claim construction issues." *See, e.g., In re RAH Color Techs. LLC Patent Litig.,* 347 F. Supp. 3d 1359, 1360 (J.P.M.L. 2018); *In re Nebivolol ('040) Patent Litig.,* 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012).

*Fourth,* Plaintiff is seeking a permanent injunction against all 38 defendants to preclude the commercial manufacture, use, sale, offer for sale, or importation into the United States of defendants' ANDA products, or any other drug product covered by or whose use is covered by one or more of the patents-in-suit, prior to the expiration of those patents, inclusive of any extension(s) and additional period(s) of exclusivity. The availability of permanent injunctive relief will turn on common questions of fact. *See eBay v. MercExchange, L.L.C.,* 547 U.S. 388, 391–92 (2006) (observing that to obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."). Additionally, in the event

that any defendants attempt to market their ANDA products before these actions are decided, Plaintiff may seek preliminary injunctive relief, the availability of which will also turn on common questions of fact.  *See, e.g., Metalcraft of Mayville, Inc. v. Toro Co.,* 848 F.3d 1358, 1363–64 (Fed. Cir. 2017).

**2.     Centralization In The District Of Delaware
          Will Minimize The Burdens On The Parties And Witnesses**

Centralization of these actions before Judge Stark will best serve the convenience of the parties and witnesses.  Placing all of these actions before a single Court will ensure a common pretrial schedule, common fact and expert discovery, and a streamlined and consistent approach to motions practice and claim construction.  It will also obviate the need for witnesses to appear and to participate in more than one proceeding.

Centralization in the District of Delaware before Judge Stark will maximize these benefits.  Currently, 35 of 38 defendants (comprising 17 different groups of generic drug makers) are defendants exclusively in Delaware.  Consolidating the Mylan West Virginia Action in Delaware thus would cause no disruption for all other defendants or for the Plaintiff.  Twelve defendants are incorporated in Delaware, and counsel for the remaining ANDA-filer defendants other than Mylan have represented that they will not contest personal jurisdiction or venue in Delaware for purposes of this litigation.  *See* Loh Declaration.  Put simply, every other litigant in these actions except Mylan has signaled a willingness to litigate these matters in Delaware.  This Panel repeatedly has consolidated actions in Delaware under similar circumstances. *See, e.g., In re Palbocyclib,* 396 F. Supp. 3d at 1362; *In re Kerydin,* 366 F. Supp. 3d at 1370; *In re Alfuzosin Hydrochloride Patent Litig.,* 560 F. Supp. 2d 1372, 1374 (J.P.M.L. 2008) (centralizing four Hatch- Waxman actions in the District of Delaware by transferring to Delaware one action pending in the Southern District of Florida).

Judge Stark previously has presided over complex patent actions, including a multidistrict patent case. *See, e.g.*, *In re Auryxia*, 2019 U.S. Dist. LEXIS 133975, at *3. Judge Stark also has substantial experience with Hatch-Waxman litigation, having presided over more than 400 Hatch-Waxman cases. *See* Lex Machina Search: District Judge Leonard Philip Stark with case tag Patent:ANDA (performed December 19, 2019), filed concurrently herewith as Exhibit A.

Delaware also is the more convenient location for many parties and witnesses, as the District of Delaware courthouse is just 21 miles from a major international airport (Philadelphia). By contrast, the Northern District of West Virginia courthouse is nearly 120 miles from the nearest airport with international routes (Pittsburgh).

**3.    Centralization In The District Of Delaware Will Promote Just And Efficient Conduct Of The Actions**

Centralization of Hatch-Waxman actions pending in multiple districts was expressly contemplated by the drafters of the Hatch-Waxman Act:

> In the event of multiple ANDA's certifying patent invalidity or noninfringement, the courts should employ the existing rules for multidistrict litigation, when appropriate, to avoid hardship on the parties and witnesses and to promote the just and efficient conduct of the patent infringement actions.

*See* H.R. Rep. No. 98-857, pt. 1, at 28 & n.14 (1984). The Panel has repeatedly observed that Hatch-Waxman actions "are particularly well-suited for transfer under Section 1407," *In re Rosuvastatin Calcium Patent Litig.,* 560 F. Supp. 2d 1381, 1383 (J.P.M.L. 2008); *In re Desloratadine Patent Litig.,* 502 F. Supp. 2d 1354, 1355 (J.P.M.L. 2007) (citing *In re Metoprolol Succinate Patent Litig.,* 329 F. Supp. 2d 1368 (J.P.M.L. 2004)), and "has frequently centralized litigation comprised of only two Hatch-Waxman Act cases," *In re Nebivolol*, 867 F. Supp. 2d at 1355 & n.4.

In keeping with these legislative and judicial pronouncements, the Panel has centralized more than a dozen Hatch-Waxman actions, while denying centralization only once where the actions at issue were filed two years apart and in very different procedural postures. That is not the case here.[5]

Plaintiff's four Hatch-Waxman actions asserting the patents-in-suit present the same canonical scenario and should be centralized in keeping with the Panel's decisions in prior actions. The alternative—parallel litigation in the District of Delaware and Northern District of West Virginia—would lead to unnecessary duplication of effort by the two courts. With duplication comes the risk of inconsistent rulings on discovery disputes and claim construction.

---

[5] The undersigned counsel is aware of eighteen motions for centralization in Hatch-Waxman actions that have been granted by the MDL Panel. See *In re Palbociclib Patent Litig.*, 396 F. Supp. 3d 1360 (J.P.M.L. 2019) (MDL No. 2912); *In re Auryxia (Ferric Citrate) Patent Litig.*, MDL No. 2896, 2019 U.S. Dist. LEXIS 133975 (J.P.M.L. July 31, 2019); *In re Kerydin (Tavaborole) Topical Sol. 5% Patent Litig.*, 366 F. Supp. 3d 1370 (J.P.M.L. 2019) (MDL No. 2884); *In re Nebivolol ('040) Patent Litig.*, 867 F. Supp. 2d 1354 (J.P.M.L. 2012) (MDL No. 2364); *In re Fenofibrate Patent Litig.*, 787 F. Supp. 2d 1352 (J.P.M.L. 2011) (MDL No. 2241); *In re Armodafinil Patent Litig.*, 755 F. Supp. 2d 1359 (J.P.M.L. 2010) (MDL No. 2200); *In re Tramadol Hydrochloride Extended-Release Capsule Patent Litig.*, 672 F. Supp. 2d 1377 (J.P.M.L. 2010) (MDL No. 2126); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 657 F. Supp. 2d 1375 (J.P.M.L. 2009) (MDL No. 2118); *In re Rosuvastatin Calcium Patent Litig.*, 560 F. Supp. 2d 1381 (J.P.M.L. 2008) (MDL No. 1949); *In re Alfuzosin Hydrochloride Patent Litig.*, 560 F. Supp. 2d 1372 (J.P.M.L. 2008) (MDL No. 1941); *In re Brimonidine Patent Litig.*, 507 F. Supp. 2d 1381 (J.P.M.L. 2007) (MDL No. 1866); *In re Desloratadine Patent Litig.*, 502 F. Supp. 2d 1354 (J.P.M.L. 2007) (MDL No. 1851); *In re Rivastigmine Patent Litig.*, 360 F. Supp. 2d 1361 (J.P.M.L. 2005) (MDL No. 1661); *In re Metoprolol Succinate Patent Litig.*, 329 F. Supp. 2d 1368 (J.P.M.L. 2004) (MDL No. 1620); *In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380 (J.P.M.L. 2002) (MDL No. 1445); *In re Gabapentin Patent Litig.*, MDL No. 1384, 2001 WL 34834423 (J.P.M.L. Feb. 5, 2001); *In re Omeprazole Patent Litig.*, MDL No. 1291, 1999 U.S. Dist. LEXIS 12589 (J.P.M.L. Aug. 12, 1999); *In re Nabumetone Patent Litig.*, MDL No. 1238, 1998 U.S. Dist LEXIS 13735 (J.P.M.L. Sept. 2, 1998).

The sole Hatch-Waxman action in which the Panel denied centralization, *In re Sumatriptan Succinate Patent Litig.*, 381 F. Supp. 2d 1378, 1379 (J.P.M.L. 2005) (MDL No. 1701), involved actions that, unlike here, were filed two years apart and on "opposite ends of the discovery process." MDL No. 1701, ECF No. 8 at 1 (J.P.M.L. June 8, 2005).

Parallel litigation also would burden the parties and their witnesses with competing case schedules, multiplication of depositions and hearings, and the added expense and inconvenience that would accompany this redundancy. By contrast, centralization in Delaware will promote the fair and efficient resolution of the disputes by minimizing these burdens.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Panel transfer *Novartis Pharmaceuticals Corporation v. Mylan Pharmaceuticals Inc., Mylan Inc., Mylan Laboratories Limited*, Case No. 1:19-cv-00201-IMK, pending in the Northern District of West Virginia, to Chief Judge Leonard P. Stark in the District of Delaware for coordinated and consolidated pretrial proceedings.

Dated: December 20, 2019 

Respectfully submitted,

/s/ Christopher E. Loh
Nicholas N. Kallas
Christina Schwarz
Christopher E. Loh
Susanne L. Flanders
Jared L. Stringham
Shannon K. Clark
Laura K. Fishwick
Gregory J. Manas
VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100
nkallas@venable.com
cschwarz@venable.com
cloh@venable.com
slflanders@venable.com
jlstringham@venable.com
skclark@venable.com
lfishwick@venable.com
gjmanas@venable.com

Daniel M. Silver
Alexandra M. Joyce
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

James F. Companion
Sandra K. Law
SCHRADER COMPANION DUFF & LAW, PLLC
401 Main Street
Wheeling, WV 26003
(304) 233-3390
jfc@schraderlaw.com
skl@schraderlaw.com

*Attorneys for Plaintiff Novartis Pharmaceuticals Corporation*